# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NAOMI W.,[1]

      **Plaintiff,**

                  **Case No. 3:22-cv-3393**
   v.                   **Magistrate Judge Norah McCann King**

MARTIN O'MALLEY,
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Naomi W. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On May 18, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since October 1, 2017. R. 88, 101, 253–58. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 116–20, 127–29. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 130. ALJ Kenneth Ayers held a hearing on May 5, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–70. In a decision dated August 20, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 18, 2018, the date on which Plaintiff's application was filed, through the date of that decision. R. 18–33. That decision became final when the Appeals Council declined review on April 1, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 29, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On March 30, 2023, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 26 years old when she filed her application. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 18, 2018, the date on which the application was filed, and the date of the decision. R. 20.

At step two, the ALJ found that Plaintiff's depressive/bipolar disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD") were severe impairments. R. 21.  The ALJ also found that Plaintiff's diagnosed vitamin D deficiency, obesity, and drug and alcohol abuse ("DAA"), in remission, were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–25.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various additional limitations. R. 25–31. The ALJ also found that Plaintiff had no past relevant work. R. 31.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a labeler, a mail sorter, and a ticket tagger—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 18, 2018, the application date, through the date of the decision. R. 33.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 7. The

Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8.

## IV.   DISCUSSION

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation—*i.e.,* that Plaintiff's mental impairments neither meet nor medically equal Listings 12.04, 12.06, or 12.15. *Plaintiff's Moving Brief*, ECF No. 7, pp. 8–28. For the reasons that follow, Plaintiff's challenges are well taken.

At step three, an ALJ considers whether any of the claimant's medically determinable impairments, or the combination thereof, meets or medically equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets or equals a

listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505

(citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates

that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did

not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that

there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

At step two of the sequential evaluation in the present case, the ALJ determined that

Plaintiff suffered the severe impairments of depressive/bipolar disorder, anxiety disorder, and

PTSD. R. 21. The ALJ determined at step three that these impairments, considered singly or in

combination, neither met nor medically equaled Listing 12.04, which addresses depressive,

bipolar and related disorders, Listing 12.06, which addresses anxiety and obsessive-compulsive

disorders, or Listing 12.15, which addresses trauma-and stressor-related disorders. R. 22–25. *See*

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15. In order to meet any of these

Listings, a claimant must satisfy the criteria in paragraph A and either the paragraph B or

paragraph C criteria of these Listings. *Id*. The paragraph B[4] criteria of Listings 12.04, 12.06, and

12.15 are identical and are satisfied when a claimant has an extreme limitation[5] in one, or a

marked limitation[6] in two, of the following four mental functional areas: understanding,

remembering, or applying information; interacting with others; concentrating, persisting, or

maintaining pace; and adapting or managing oneself. *Id*. at §§ 12.03B, 12.04B, § 12.15B.

---

[4] The paragraph A criteria are addressed later in this decision.

[5] An "extreme" limitation means that the claimant is unable to function in this area independently, appropriately, effectively, and on a sustained basis. *Id*. at § 12.00F2e.

[6] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id*. at § 12.00F2d.

In considering the paragraph B criteria of these Listings, the ALJ found that Plaintiff had only a "mild" limitation in the area of understanding, remembering, or applying information, and a "moderate" limitation in the three remaining areas—*i.e.*, interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 22–25. Plaintiff specifically challenges the ALJ's finding that Plaintiff had only moderate limitations in the areas of interacting with others and in adapting or managing oneself. *Plaintiff's Moving Brief*, ECF No. 7, pp. 14–23. The Court addresses in turn these areas of challenge.[7]

### A.    Interaction with Others

The Listings explain the function of interacting with others as follows:

> This area of mental functioning refers to the *abilities to relate to and work with supervisors, co-workers, and the public*. Examples include: cooperating with others; asking for help when needed; *handling conflicts with others*; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and *keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness*. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E2 (emphasis added). In the present case, the ALJ found only a moderate limitation in this area, reasoning as follows:

> In interacting with others, the claimant has a moderate limitation. She endorsed limitations in getting along with others in her Function Report, stating that *she is "not a fan of people"* (see 6E/5), and *she has had altercations with customers while working* (e.g., 4E/3; 6E/7; testimony). On psychological CE [consultative examination] in December 2018, she presented as appropriately groomed, pleasant and cooperative, and attempted to respond to all questions asked, elaborating upon responses when asked to do so. Her speech was clear and easy to understand, and she maintained consistent eye contact with the examiner. However, *she endorsed current difficulty with social anxiety and stated that she has "always had difficulty being around people"* (10F/2). The examiner offered a diagnosis of social anxiety

---

[7] Plaintiff also challenges the ALJ's finding that Plaintiff did not meet the paragraph C criteria; however, the Court does not address this challenge, having concluded that Plaintiff's arguments regarding the paragraph B criteria are meritorious.

disorder (10F/3). In March 2019, the claimant visited the Emergency Department ("ED") and MedExpress for a panic attack, and she was prescribed clonazepam 0.5 mg as needed for anxiety as well as hydroxyzine 25 mg (12F; 13F). In September 2019, she reported to her primary care provider that she did not think her medication for anxiety was working well (14F/6), but by December 19, 2019, though still having "bouts of anxiety," she reported her anxiety to be improving (14F/10). On mental status examination on psychiatric evaluation in March 2020 (see 15F/12-15), the claimant was well groomed, pleasant, cooperative and engaged, with good eye contact, despite depressed mood and tearful affect at times (15F/14). As of May 12, 2021, *she was noted to be still struggling with anxiety due to social media, news, current events and her own personal experiences, and she can become "verbally aggressive" with others if feeling provoked. She can also display paranoia and dissociate at times, and she "feels unsafe and does not trust anyone" (16F/4).* Overall, the evidence of record is consistent with a moderate limitation in interacting with others.

R. 23.

Plaintiff challenges this finding, arguing that the evidence establishes that Plaintiff has a marked or extreme limitation in this area of mental functioning. *Plaintiff's Moving Brief*, ECF No. 7, pp. 14–16. Plaintiff specifically contends that the ALJ either omitted or downplayed relevant evidence regarding Plaintiff's limitations in social interaction that supports a greater than moderate limitation of function. *Id*. (citations omitted). Plaintiff further contends that the ALJ wrongly emphasized irrelevant details, such as Plaintiff's ability to maintain eye contact with her medical examiners. *Id*. Plaintiff therefore argues that the ALJ failed to adequately explain his finding and that substantial evidence does not support the finding of only a moderate limitation in Plaintiff's ability to interact with others. *Id*. This Court agrees.

As a preliminary matter, the ALJ appears to have relied heavily on the fact that Plaintiff was characterized as pleasant, cooperative, and having maintained eye contact with examiners on two occasions in December 2018 and March 2020. R. 23. However, the United States Court of Appeals for the Third Circuit has noted that, for an individual "who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home

11

or a mental health clinic." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Subpart P, § 12.00E2 (instructing, *inter alia*, that the area of mental functioning of interacting with others "refers to the abilities to relate to and work with *supervisors, co-workers, and the public*") (emphasis added). Notably, the ALJ acknowledged that Plaintiff reported that "she has had altercations with customers while working[.]" R. 23. The ALJ also acknowledged in other parts of his decision that Plaintiff engaged in confrontations with others at different jobs and it is not clear to the Court if those altercations were limited to only customers. R. 26–27 ("She stated that she stopped working on November 1, 2017, both because of her conditions and 'other reasons,' reporting that she has built up anger and fought with a customer at her last job"; "[s]he reported getting fired or quitting her job at Goodwill in 2008 because she hit *someone*"; "she last worked in 2017, at Sally Beauty Supply, but left because she had an altercation with a customer. She previously had issues at Lowe's, where she only worked for a week for two, indicating *she had an altercation there as well*"; Plaintiff "stated that she has had 8-10 jobs since 2012 that only lasted a day or so because *she would have blow-ups due to anger* or would not return due to depression or anxiety/panic attacks") (emphasis added), R. 28 ("She reported last attempting to work in October 2017, at Sally's Beauty Supply, but she was only there for a month and tried other jobs previously but her anxiety caused her issues while working, and she does not like to be around people"). The ALJ further acknowledged at step three that, *inter alia*, Plaintiff (1) "endorsed limitations in getting along with others in her Function Report, stating that she is 'not a fan of people'"; (2) "endorsed current difficulty with social anxiety and stated that she has 'always had difficulty being around people'" in December 2018; (3) in March 2019, she visited the emergency department for a panic attack and was prescribed clonazepam and hydroxyzine; and (4) in May 2021, Plaintiff

12

"was noted to be still struggling with anxiety due to social media, news, current events and her own personal experiences, and she can become 'verbally aggressive' with others if feeling provoked. She can also display paranoia and dissociate at times, and she 'feels unsafe and does not trust anyone[.]'" R. 23. While the ALJ found that "[o]verall, [this] evidence of record is consistent with a moderate limitation in interacting with others[,]" the ALJ did not explain this conclusion in light of the record evidence detailed above, including, *inter alia*, Plaintiff's history of altercations with others in the work environment and Plaintiff's admissions in May 2021 that she becomes verbally aggressive with other people when she feels provoked and that she is paranoid and does not trust anyone. *See id*. Notably, the ALJ's RFC determination at step four that Plaintiff "can never interact with the public[,]" R. 25,[8] suggests a greater than moderate limitation in the area of interacting with others. *See Hull v. Berryhill*, No. 3:18-CV-0006, 2018 WL 3546555, at *7–8 (M.D. Pa. July 24, 2018) (remanding where the ALJ found a moderate limitation in interacting with others but also limited the plaintiff to no public interaction, because the ALJ thus "essentially found in his RFC assessment that Plaintiff had at least a marked limitation in her ability to interact with the general public"). In short, the ALJ's conclusory statement that the evidence supports only a moderate limitation in the area of interacting with others precludes meaningful review. *See Jones*, 364 F.3d at 505 (stating that there still must be

---

[8] The ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: The claimant is able to perform simple, routine tasks; she is able to make simple work-related decisions; she is able to interact with supervisors and coworkers occasionally, but never work in tandem with coworkers; and she can never interact with the public.

R. 25.

"sufficient development of the record and explanation of findings to permit meaningful review"); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Commissioner nevertheless argues that the ALJ properly found that Plaintiff had only a moderate limitation in the area of interacting with others because, *inter alia*, "at a face-to-face interview with an SSA employee, Plaintiff was noted to be 'very helpful with information needed' (Tr. 295)"; "the records from her therapist in 2018 reveal that she was making significant progress" in her ability to handle conflicts with others; and that it was noted in September in 2018 that Plaintiff "handled a difficult interaction 'better than any difficult event she has experienced since therapy began' (Tr. 555)" and that Plaintiff "'appears to becoming (sic) more emotionally stable' when dealing with a problematic neighbor (Tr. 557)." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, pp. 21–22. The ALJ, however, did not rely on this reasoning when finding only a moderate limitation in this area of mental functioning. R. 23. The Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678,

2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the

ALJ's decision based on the rationale contained in that decision; the Court is not to consider

hypothetical rationales, which may justify the ALJ's decision, but which were not in fact

underlying the opinion in question.") (citation omitted).

The Commissioner also relies on the ALJ's statement at step four that, in December

2018, Plaintiff was noted to have "'significantly more impulse control' (11F/6)." *Defendant's

Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, p. 22 (citing R. 28, 585). This reliance is

unavailing in light of the ALJ's observation that, in May 2021, Plaintiff could become "verbally

aggressive" with others if feeling provoked. R. 23; *see also* R. 639 (finding further in May 2021

that Plaintiff's coping techniques do not work when her issues with mental health are active and

"everything is heightened").

For all these reasons, the Court cannot conclude that substantial evidence supports the

ALJ's finding that Plaintiff had only a moderate limitation in her ability to interact with others.

### B.   Adapting or Managing Oneself

The Listings explain the area of adapting and managing oneself as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control
> behavior, and maintain well-being *in a work setting*. Examples include: Responding
> to demands; adapting to changes; *managing your psychologically based symptoms*;
> distinguishing between acceptable and unacceptable work performance; setting
> realistic goals; making plans for yourself independently of others; maintaining
> personal hygiene and attire appropriate to a work setting; and being aware of normal
> hazards and taking appropriate precautions. These examples illustrate the nature of
> this area of mental functioning. We do not require documentation of all of the
> examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4 (emphasis added).

In the present case, the ALJ found only a moderate limitation of functioning in this area,

reasoning as follows:

15

As for adapting or managing oneself, the claimant has experienced a moderate limitation. She endorsed difficulty handling stress and changes in routine in her Function Report, for which she indicated taking medication "on and off" since 2014 and talking with a therapist (6E/7). On the intake assessment at Catholic Charities in December 2017, her appearance was appropriate, with normal motor behavior and logical thought organization, despite angry, anxious and depressed mood, with affect described as angry and anxious, but also pleasant (see 3F/12-13). She also denied current suicidal ideation ("SI") or homicidal ideation ("HI"), her behavior was guarded but cooperative, and insight was "adequate" but impulse control and judgment "questionable." She was diagnosed with major depressive disorder, moderate; and adjustment disorder, with mixed anxiety and depression (3F/13-14). On psychological CE of December 4, 2018, the claimant reported sleep issues since the trauma of, the death of her daughter's father, who was shot to death by police in 2016 (10F/1; see also, e.g., 3F/3). She also has a history of one suicide attempt, in 2014 by overdosing on baby aspirin after the death of her father, for which she was consequently evaluated in the ER for several days but was found to be stable and to not require inpatient hospitalization. She was then referred for adult partial hospitalization ("APH") instead, but she did not want to receive treatment at that level of care and agreed to intensive outpatient ("IOP")-level treatment, for which an appointment was scheduled (see 1F/1). However, she did not attend the appointment and did not respond to outreach attempts (1F/1-2). As of the CE, the claimant reported she was not currently enrolled in any treatment programs. On mental status examination, good reality ties were noted, with no evidence of a thought disorder, and while she acknowledged past suicidal thinking, she denied any intentions, plans or attempts. She endorsed current issues with social anxiety, while her mood during the examination was noted to be calm with congruent affect (10F/2). The examiner indicated a diagnosis of social anxiety disorder, but that the claimant would be capable of managing her own benefits, if awarded (10F/3). As noted, she was treated for a panic attack in March 2019, at which time she was prescribed clonazepam (Klonopin) and hydroxyzine (see 12F; 13F). While she indicated her anti-anxiety medications were not working well as of September 2019 (see 14F/6), she reported improving anxiety despite still having "bouts" of anxiety as of December 19, 2019 (14F/10). On mental status examination on psychiatric evaluation in March 2020, mood was depressed with tearful affect at times, but she denied SI/HI and hallucinations, there was no evidence of delusions or psychosis observed, and she was well groomed, pleasant, cooperative and engaged with good eye contact. Additionally, her speech was normal, thought process was logical and coherent, she was focused with intact memory, and insight and judgment good. The claimant was diagnosed with bipolar I disorder, PTSD, and generalized anxiety disorder ("GAD") (see 15F/12-14). As of May 2021, she was on a medication regimen of gabapentin, Seroquel and Klonopin, and attending individual therapy sessions. According to her counselor, she presented with "mixed moods ranging from labile, manic, to depressive states," but had "great insight" into her disorders, feelings and emotions; however, she had not yet been ready to fully start working on her PTSD symptoms (see 16F/3). She also continued to struggle with anxiety due to social media, news, current events and her own personal experiences, but

was working with her counselor to identify triggers and coping mechanisms, e.g., self-soothing and avoidance. It was reported that the claimant can become verbally aggressive, if provoked; she can display paranoia and dissociate at times; and she also feels unsafe and does not trust anyone. However, she was "externally [sic] motivated to change," and was able to homeschool her daughter at this time (16F/4). Overall, the evidence supports finding a moderate limitation in adapting or managing oneself.

R. 24.

Plaintiff raises a number of challenges to this finding, arguing that the evidence establishes that Plaintiff had an extreme—or at least a marked—limitation in this area of mental functioning. *Plaintiff's Moving Brief*, ECF No. 7, pp. 16–23. Plaintiff also contends that the ALJ again improperly focused on evidence that is irrelevant to the consideration of Plaintiff's ability to adapt or manage herself, *i.e.*, her ability to homeschool her daughter, her "great insight" into her disorders, her ability to manage benefits, and her motivation to change her behavior, particularly in light of other evidence, including, *inter alia*, her dependence on others (Plaintiff's mother and boyfriend), her paranoia, her social isolation, and her manic episodes. *Id.* (citing, *inter alia*, *Andrew S. v. Comm'r of Soc. Sec.*, No. CV 18-17212 (ES), 2022 WL 795746 (D.N.J. Mar. 16, 2022)). Plaintiff further complains that the ALJ failed to analyze why Plaintiff had been referred to a partial hospitalization program and why she failed to leave her home to attend intensive outpatient treatment. *Id.* at 17. The Commissioner, for his part, contends that the ALJ properly considered the evidence and appropriately concluded that Plaintiff suffers from only a moderate limitation in her ability to adapt and manage herself. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, pp. 23–24. The Commissioner's argument is not well taken.

As detailed above, this area of mental functioning considers a claimant's abilities to regulate emotions, control behavior, and maintain well-being in a work setting, including, *inter alia*, managing psychologically based symptoms. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4.

Although the ALJ did not discuss this evidence when considering Plaintiff's ability to adapt or manage herself, *see* R. 24, this Court has already referred to evidence of Plaintiff's inability to control her anger and anxiety in different work settings, and of Plaintiff's loss of jobs because of this issue. In addition, the ALJ noted, *inter alia*, evidence that, in December 2017, Plaintiff had "questionable" impulse control and judgment; that, in December 2018, she endorsed social anxiety; that she was treated for a panic attack in March 2019 and was prescribed Klonopin and hydroxyzine; that, despite improved anxiety in December 2019, she still suffered from "bouts of anxiety"; and that, in May 2021, she was on a medication regimen of gabapentin, Seroquel, and Klonopin, that she presented with "mixed moods ranging from labile, manic, to depressive states" and that, while she had "great insight" into her disorders, she was "not yet been ready to fully start working on her PTSD symptoms" and continued to struggle with anxiety, became verbally aggressive if provoked, and displayed paranoia and disassociated at times. R. 24. Despite this evidence, the ALJ concluded that Plaintiff was only moderately limited in the area of adapting or managing herself, apparently because the ALJ also noted that Plaintiff presented to examiners with, *inter alia*, an appropriate appearance with normal motor behavior and logical thought process, was pleasant with good eye contact; was capable of managing benefits; had "great insight" into her disorders; was working with a counselor to identify triggers and coping methods; was motivated to change; and was "able to homeschool her daughter at this time [in May 2021 during the COVID epidemic]." *Id*. As Plaintiff points out, however, the ALJ relied on evidence that is not apparently relevant to an ability to regulate one's emotions, control one's behavior, and maintain one's well-being in a work setting. *See Andrew S.*, 2022 WL 795746, at *4 ("Plaintiffs' [sic] ability to care for his children is not so clearly probative of his ability 'to regulate emotions, control behavior, and maintain well-being in'—specifically—'a work

setting.'"); *id.* at *5 (finding that evidence, if credited, could show a consistent pattern of behavior that shows the claimant may not be able to "independently, appropriately, effectively, and on a sustained basis" adapt or manage himself in a work setting, including, *inter alia*, that "Plaintiff has not held substantial gainful employment in years"; "sleeps 14 hours per day"; "cries 3-4 times per week when . . . thinking about current stressors"; and has had "no close friends" in the preceding three years); *cf. Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019) ("Without more explanation as to how her activities would translate to the workplace, Nazario's daily in-home activities (especially activities like 'listening to Christian music') are not substantial evidence that Nazario is not disabled."). Moreover, while the ALJ points to evidence that Plaintiff was "motivated to change" and had "great insight" into her disorders, feelings, and emotions as of May 2021, R. 24 (citing 16F/4, R. 639), the medical record also reflected that, *inter alia*, "[d]uring the times that MH are active, the coping techniques the client attempts to apply does [sic] not work as everything is heightened. It takes a long time for the client to maintain stability on her own at that point." R. 639; *see also* R. 634 (reflecting that in March 2020 Plaintiff reported "difficulty with anger and agitation" and that although Plaintiff was "bright and insightful[,]" "[s]he is experiencing depression and anxiety now and panic attacks that are interfering with her life" and recommending that Plaintiff participate in weekly psychotherapy sessions "with a focus on anger management and past trauma along with medication therapy"). Without more explanation, the Court is unable to understand why the ALJ concluded that the evidence established that Plaintiff had only a moderate limitation in her ability to adapt and manage herself. *See Jones*, 364 F.3d at 505; *Sanford*, 2014 WL 1294710, at *2; *cf. Spruyt v. Berryhill*, No. 1:19-CV-00169-CWD, 2020 WL 6586243, at *4 (D. Idaho Nov. 10, 2020) ("There is evidence in the record that Petitioner was

19

unable to hold a job, and he was terminated from his most recent position after a psychologically based outburst. The ALJ did not include this evidence in his discussion of the paragraph B criteria. And, it is unclear how the ability to dress, bathe, and groom oneself appropriately supports adequately a finding of mild limitation in this area in light of other evidence that stress, specifically stress experienced in a work setting, caused a significant increase in Petitioner's psychologically based symptoms.").

At bottom, the Court cannot conclude that the ALJ's failure to adequately explain his reasoning in connection with these mental functioning areas is harmless where an extreme limitation in one of those areas or a marked limitation in both of those areas would result in a finding that the paragraph B criteria of Listings 12.04, 12.06, and 12.15 have been met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B, and 12.15B.[9] This Court therefore

---

[9] The Commissioner argues in passing that Plaintiff has not demonstrated that she has met the paragraph A criteria for Listings 12.04, 12.06, or 12.15. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, p. 19. Under the facts of this particular case, the Court is not persuaded that this issue precludes remand. For example, the paragraph A criteria of Listing 12.04 are met if the claimant has medical documentation as follows:

A. Medical documentation of the requirements of paragraph 1 or 2:
1. Depressive disorder, characterized by five or more of the following:
    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.
2. Bipolar disorder, characterized by three or more of the following:
    a. Pressured speech;
    b. Flight of ideas;
    c. Inflated self-esteem;
    d. Decreased need for sleep;
    e. Distractibility;

concludes that remand of the matter for further consideration of these issues is appropriate.[10]

Moreover, remand is appropriate even if, upon further examination of the paragraph B criteria,

particularly the areas of interacting with others and adapting and managing oneself, the ALJ

again concludes that Plaintiff has not met or medically equaled a listing and ultimately is not

entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL

5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion,

but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-

12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide

an adequate explanation that would enable meaningful review, and the Court once more cannot

determine what role lay speculation played in the ALJ's rejection of this detailed functional

assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3

(W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or

misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not

absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
g. Increase in goal-directed activity or psychomotor agitation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A. The Court notes that the ALJ expressly considered evidence reflecting the requirements of paragraph A1. *See* R. 23 (reflecting depressed mood, sleep disturbances, and problems with concentration), 24 (same), 26 (reflecting sleep disturbances), 27 (reflecting sleep disturbances and suicidal ideation), 28 (reflecting sleep disturbances), 29 (reflecting sleep disturbances and fatigue/low energy), 30 (reflecting depressed mood).

[10] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the paragraph B criteria, particularly the areas of interacting with others and adapting and managing oneself, the Court does not consider those claims. However, the Court encourages further consideration of the paragraph C criteria for these Listings upon remand.

21

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

**V.      CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 1, 2024                                 *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE